**In re Dennis E. SAPOS, Debtor.**

**Dennis E. SAPOS, Plaintiff,**

**v.**

**PROVIDENT INSTITUTION OF SAVINGS IN THE TOWN OF BOSTON and the United States of America, Veteran's Administration, Defendants.**

Civ. A. No. 91–258.
Bankruptcy No. 90–71–JLC.
Adv. No. 90–72.

United States District Court,
W.D. Pennsylvania.

Sept. 30, 1991.

---

Donald R. Calaiaro, Pittsburgh, Pa., for debtor.

Gary J. Gaertner, Pittsburgh, Pa., for trustee.

Edward Purviance, Veteran's Admin., Mary Beth Buchanan, Asst. U.S. Atty., Pittsburgh, Pa., for VA.

Carolee Berasi, Pittsburgh, Pa., for Provident Inst. of Sav.

## MEMORANDUM OPINION

BLOCH, District Judge.

Pursuant to 28 U.S.C. § 158, this Court is now determining the Appeal from the Order Confirming Debtor's Chapter 13 Bankruptcy Plan, dated December 19, 1990, entered by the Bankruptcy Court for the Western District of Pennsylvania (Bankruptcy Judge Joseph L. Cosetti). Appellant in the instant action is the Provident Institution of Savings, now known as Shawmut Mortgage Company (Shawmut).

The facts are as follows. On September 24, 1984, the debtor, Dennis E. Sapos, borrowed $34,000 to purchase real estate in Allegheny County, Pennsylvania. The mortgage securing the funds was properly executed and recorded. The loan was guaranteed by the Veterans Administration of the United States of America (VA). The rights under the mortgage were sold or assigned to the appellant, Shawmut. The mortgage terms provided for repayment over 30 years, at 13.5% interest per annum, in monthly installments of $389.44 for principal and interest, plus such further sums as may be required for property tax and insurance escrow accounts. The mortgage claims an interest in the real estate as well as the wall-to-wall carpeting, rents, profits, and appliances.

On January 10, 1990, Sapos filed a Chapter 13 bankruptcy petition. Shawmut filed a claim as a secured creditor, listing unpaid principal indebtedness of $33,618.85. The total amount of Shawmut's claim as of the filing date was $44,989.53 (that includes

interest, late charges and costs). Shawmut also asserts mortgage arrearage as of the filing date totalling $11,188.12.

The Bankruptcy Court approved a stipulation between Sapos and Shawmut fixing the value of Sapos' property at $17,000. The VA was held in default for failure to answer to the adversary proceeding that was held.

The Bankruptcy Court ultimately upheld Sapos' Second Amended Plan, filed on December 4, 1990 (the Plan). Under the Plan, Sapos proposed to pay the allowed amount of Shawmut's secured claim with interest at the contract rate and with monthly installments for principal and interest as provided in the contract. Appellant Shawmut requests that this Court reverse that confirmation.

## I.

Appellant Shawmut seeks reversal of the confirmation of the Plan based on four propositions: (1) "If a Chapter 13 plan does not provide for the liquidation of the allowed secured portion of a bifurcated claim in full during the course of the plan, then the plan must provide for the payment of such allowed secured portion by maintenance of regular monthly mortgage payments as and when they become due under the terms of the note and mortgage"; (2) "In addition to paying the entire allowed secured portion of a bifurcated claim by maintaining regular monthly mortgage payments after the filing of bankruptcy, debtor must also cure all prepetition arrearages"; (3) "The debtor's proposed plan fails to provide that Shawmut will receive as much in this Chapter 13 as it would if debtor were to liquidate under Chapter 7 in contravention of 11 U.S.C. § 1325(a)(4)"; (4) "Debtor's second amended plan has been proposed in bad faith in contravention of 11 U.S.C. § 1325(a)(3), is inequitable, and cannot be allowed."

1. This Court will not entertain Shawmut's assertion that the actual value of the property for § 506(a) purposes is $19,000. Counsel for Shawmut stated in the proceeding before the Honorable Judge Cosetti, "And we would agree that we have stipulated to $17,000, that's what

Upon review of the Memorandum Opinion of Bankruptcy Judge Cosetti, issued June 17, 1991, and the briefs filed by appellant Shawmut, the debtor Sapos, and the trustee for the Western District of Pennsylvania (trustee), the Order of the Bankruptcy Court will be affirmed.

## II.

In the instant action, Sapos executed a Mortgage Note evidencing an obligation to the mortgagee of a principal sum of $34,-000, together with interest, payable each month, until paid in full or until October 1, 2014. Despite the amount stated in the mortgage note, under 11 U.S.C. § 506(a), the value of Shawmut's secured claim is "to the extent of the value of such creditor's interest in the estate's interest in such property...." 11 U.S.C. § 506(a). The parties have stipulated that the actual value of the property mortgaged was $17,000. The Bankruptcy Court has accepted such stipulation. Therefore, the value of Shawmut's secured claim is $17,000.[1]

This is perfectly consistent with settled case law in the Third Circuit. *See, e.g., Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990). In *Wilson*, the Third Circuit put to rest any question as to whether a mortgage may be bifurcated into an allowed secured claim (consisting of the actual value of the property) and an allowed unsecured claim in a Chapter 13 proceeding, ruling that such a bifurcation was appropriate. *Wilson*, 895 F.2d at 128. *See also United States v. Ron Pair Enter.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The Plan provides for the payment of the secured portion of appellant's claim, $17,000, under the original contractual terms, including the contractual interest rate and payment amounts. This is also perfectly consistent with the law. *Appeal of Capps*, 836 F.2d 773 (3d Cir.1987). Under Chapter 13, a debtor may cure exist-

we believe the value of the property is. And we have no problem with that stipulation at all." (Transcript of Proceedings, Nov. 21, 1990, at p. 10.) Shawmut may not, now, attempt to undermine what they have already stipulated to.

ing defaults from a long term debt in which the final payment falls beyond the life of the plan, exactly the situation in the instant case. 11 U.S.C. § 1322(b)(5); 5 *Collier on Bankruptcy* ¶ 1322.09 at 1322–18–19 (15th ed.1991). *See also Appeal of Capps*, 836 F.2d at 774 ("Section 1322(b)(5) makes clear that the prohibition against modification of residential mortgages does not preclude their cure....").[2] The Bankruptcy Code requires that the cure of the default be accomplished "within a reasonable time ... and that the regular mortgage payments be maintained...." *Id.* Both conditions have been met in the instant Plan.

Appellant asserts that Sapos' pre- and post-petition arrearages must be cured *in addition* to the secured claim that Shawmut is entitled to. Therefore, according to appellant, they are entitled to the $17,000, comprising the secured claim, *plus* $11,-188.12 in arrearages. This assertion is erroneous. In *Appeal of Capps*, 836 F.2d 773 (3d Cir.1987), the Court concluded, "[c]ure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts." *Id.* at 777. In *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987), the Court stated, "We read § 1322(b)(5) to authorize the curing of default in, and restoration of, a contractual relationship." *Id.* at 1377.

Sapos has not sought to avoid payment of these arrearages. The Plan, as interpreted by Judge Cosetti, safeguards against this proscribed behavior. *In re*

*Cole*, 122 B.R. 943 (Bkrtcy.E.D.Pa.1991) (to avoid payment of arrearages would constitute an "inequitable windfall to the debtor"). The arrearages have been allocated to the secured portion of Shawmut's claim. Therefore, the principal balance to be paid is $5,811.88, concurrent with the payment of the arrearages of $11,188.12, for a total of $17,000. The Plan confirmed by the Bankruptcy Judge provides for Sapos to pay interest at the contract rate of 13.5% on the entire secured claim. *Appeal of Capps, supra*, specifically provides that a debtor need not pay interest in arrearages. Nonetheless, Sapos has agreed to this Plan (brief for appellee, at 22), thereby agreeing to payment of both the principal and arrearages as one class. This provides a distinct monetary advantage to Shawmut. "The holder of a claim ... who under the plan is restored to his original position ... is fortunate indeed and has no cause to complain." *Appeal of Capps*, 836 F.2d at 777 (citing legislative history).

Shawmut has been restored to the best position Shawmut could be in under the Bankruptcy Code. Perhaps most convincing is Judge Cosetti's logic. "[I]t's a pragmatic fact.... If the secured creditor is ultimately entitled to foreclosure, that's what they're entitled to. They can foreclose on the property and obtain it, bid it in at foreclosure. And what would they have? They would have property worth $17,000." (Transcript of Proceeding, Nov. 21, 1990, at 28, lines 11–21). In the instant case, Shawmut is guaranteed just that,

**2.** This Court will not address the question of whether the mortgage in the instant case is secured by anything more than the debtor's place of residence. 11 U.S.C. § 1322(b)(2). The Court notes, however, that the mortgage claims an interest in the real estate *as well as* the wall-to-wall carpeting, rents, profits, and appliances. This was enough for the *Wilson* Court to note that it provides an alternative justification for modification of the unsecured portion of a mortgage claim, stating that "[b]y its express terms, § 1322 prohibits modification of a creditor's rights only when the creditor's claim is 'secured only by a security interest in real property that is the debtor's principal residence.' 11 U.S.C. § 1322(b)(2). The mortgage agreement stated that [appellant] had a security interest in appliances, machinery, furniture and equipment.... Having listed personal property as

collateral, [appellant] has a secured interest in it. It follows that ... § 1322's anti-modification provision does not apply." *Wilson*, 895 F.2d at 128–29. This Court does not have to reach the question of whether the *Wilson* holding applies to the secured portion, as well as the unsecured portion, of a creditor's claim, because this Court has determined that the Plan falls squarely within the ambit of 11 U.S.C. § 1322(b)(5) and, therefore, is *not* a modification of Shawmut's rights. *See In re Laguna*, 944 F.2d 542 (9th Cir.1991); *In re Cole*, 122 B.R. 943, 949 (Bkrtcy. E.D.Pa.1991) ("The subsection of § 1322(b) which is implicated in the instant controversy ... is § 1322(b)(5), not § 1322(b)(2). It is therefore irrelevant that the instant mortgage document ... places the instant loan transaction outside the scope of § 1322(b)(2)....").

$17,000, paid via the original contract plan, including interest.

## III.

■ Appellant suggests that 11 U.S.C. § 1325(a)(4)'s liquid alternative test should be applied to the instant action because of the VA's guaranty of the mortgage. "If this were a Chapter 7 liquidation, Shawmut would be in a position to regain title to the property and file a claim with the VA to recover most if not all of the loss sustained as a result of non-payment by the debtor. However, if Shawmut's claim is bifurcated and the confirmation of Debtor's Second Amended Plan by the Bankruptcy Court is upheld, Shawmut, as an unsecured creditor, will receive substantially less in this Chapter 13 bankruptcy than it would if the debtor were to liquidate under Chapter 7, in contravention of § 1325(a)(4)." (Appellant's brief in chief, at 27).

Once again, Judge Cosetti's logic is sound. "The debtor's Plan ... does not prevent any action Shawmut would have against VA. The VA was a party-defendant to this action and it chose not to defend. It is bound by this Court's decisions in this case." (Memorandum opinion, at 9–12). As Judge Cosetti stated at the proceedings before him on this question, "[w]hether there should be some remedy there, I don't know what that remedy should be. But I don't think that remedy is in [the instant action], it's probably in [a different action] to require the Veteran's Administration to honor the contract absent [Shawmut's] ability to deliver a deed." (Transcript of Proceedings, Dec. 19, 1990, at 23, lines 12–19).

## IV.

■ Finally, appellant Shawmut seeks reversal based on the Plan being proposed in bad faith. *See* 11 U.S.C. § 1325(a)(3). In support of the contention that Sapos filed the Plan in bad faith, appellant states that "Debtor filed his Chapter 13 petition in the instant matter on January 10, 1991, thereby avoiding the foreclosure sale on his residence." (Appellant's brief in chief, at 28). Further, appellant asserts that "debt-

or's [Plan] does not cure prepetition arrearages which exist solely because of [Sapos'] failure to make payments for over one and one-half years prior to filing bankruptcy...." *Id.* Sapos, according to the appellant, "has been knocked off his feet twice and has been granted his third 'fresh start'." *Id.* at 29.

Appellant's "obvious" reasons for their assertion that Sapos proposed this plan in bad faith (appellant's brief in chief at 23) are the very reasons that Chapter 13 was established. Chapter 13 seeks:

> to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of debts over an extended period. (citations omitted). Congress believed that Chapter 13 would benefit debtors by permitting a debtor to "retain his property by agreeing to repay his creditors" and to "avoid the stigma attached to a straight bankruptcy...."

*Matter of Roach,* 824 F.2d at 1372.

This Court must answer the question "[i]s [Sapos] really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *In re Schaitz,* 913 F.2d 452, 453 (7th Cir.1990). *See also In re LeMaire,* 883 F.2d 1373, 1377–79 (8th Cir.1989) (providing extensive review of the law on what constitutes good and bad faith). This Court can find no bad faith in Sapos' efforts to confront and deal with what was becoming increasingly difficult financial hardship. In no way does such efforts constitute "bad faith." They constitute, instead, the exact application of Chapter 13 that Congress intended. In addition, a wage attachment has been approved by the Bankruptcy Court on March 22, 1991, and payments have been made, and are currently being made, to the Trustee to fund the Plan. (Memorandum Opinion at 8). Indeed, "a sincere effort at repayment is a sine qua non of good faith. *In re Caldwell,* 895 F.2d 1123, 1126 (6th Cir.1990)." *In re Schaitz,* 913 F.2d at 453–54. This Court finds no merit to Shawmut's claims that debtor's Plan was proposed in bad faith.

**533**

## V.

The order of the Bankruptcy Court affirming the Plan will be affirmed by this Court.