Dennis E. SAPOS

v.

PROVIDENT INSTITUTION OF SAV-
INGS IN the TOWN OF BOSTON and
the United States of America, Veteran's
Administration,

Shawmut Mortgage Company, formerly
known as Provident Institution of Sav-
ings in the Town of Boston, Appellants.

No. 91–3768.

United States Court of Appeals,
Third Circuit.

Argued May 11, 1992.
Decided June 26, 1992.

Donald E. Calaiaro (argued), Calaiaro & Corbett, P.C., Pittsburgh, Pa., for appellee.

Gary J. Gaertner (argued), Pittsburgh, Pa., Chapter 13 Trustee.

Gerald B. Alt (argued), Carolee Berasi, Shapiro & Kreisman, Pittsburgh, Pa., for appellants.

Before: STAPLETON, ALITO and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The debtor in this chapter 13 bankruptcy has received confirmation of his reorganization plan. The plan disposes of the home mortgage note held by Provident Institution of Savings (now known as Shawmut Mortgage Company) by bifurcating the amount due into an allowed secured claim equal to $17,000, the agreed value of the property at the time the bankruptcy petition was filed, and an allowed unsecured portion equal to the remaining balance, and by including pre-petition and post-petition arrearages in the allowed secured claim.

Shawmut appeals and asks that we reverse the judgment of the district court affirming the reorganization plan's approval. 132 B.R. 528 (Bankr.W.D.Pa.1991). Shawmut argues that the bankruptcy court improperly dealt with the arrearages and a schedule to pay off the secured claim. The primary issues for decision are whether the district court erred in affirming the approval of a plan that (1) included the arrearages of $11,188.12 in the allowed secured claim of $17,000.00, and (2) approved a payment schedule under which the debtor will not pay off the arrearages and the allowed secured claim before the plan expires.

I.

While this appeal was pending, the Supreme Court in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), held that a chapter 7 debtor may not apply 11 U.S.C. §§ 506(a) and 506(d) to strip down a mortgage lien, thus effectively overruling *Gaglia v. First Fed. Sav. & Loan Ass'n*, 889 F.2d 1304, 1306-11 (3d Cir.1989). Accordingly, before we meet the issues presented to us, we must decide whether the holding of *Dewsnup* reaches chapter 13 reorganization plans as well. We will follow the lead of the Court of the

Appeals for the Second Circuit in *In re Bellamy*, 962 F.2d 176 (2d Cir.1992), and decide that the holding of *Dewsnup* is limited to chapter 7 liquidations only and does not reach reorganizations under chapter 13.

We previously have held in *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d. Cir.1990), that bifurcation of a mortgage secured only by real property that is the debtor's principal residence does not modify a creditor's rights under 11 U.S.C. § 1322(b)(2). For the reasons that follow, we reaffirm the continuing vitality of *Wilson*. We also agree with Shawmut that the debtor's reorganization plan does not accord with statutory authority. Accordingly, we will reverse the district court judgment and remand the cause to the district court with a direction to vacate the bankruptcy court order confirming the plan and to remand to the bankruptcy court for further proceedings in accordance with this opinion.

The parties were properly before the bankruptcy court as provided in 28 U.S.C. §§ 157 and 1334. The bankruptcy court's confirmation order was appealable to the district court. 28 U.S.C. § 158. This court has jurisdiction under 28 U.S.C. § 1291. The appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

## A.

We will discuss the facts and proceedings in detail, but a short preliminary statement will help establish the perimeters of the legal questions before us. The debtor filed his chapter 13 petition in January 1990, and Shawmut filed a proof of claim for $44,989.53. Included in this amount were pre-petition arrearages of $11,188.12. The debtor filed an adversary proceeding under 11 U.S.C. § 506(a) to cram down Shawmut's claim. Pursuant to this proceeding, the debtor and Shawmut stipulated that the present value of the property was $17,000.00. Shawmut was recognized as having an allowed secured claim in this amount.

Under the debtor's approved plan, the debtor will pay the $17,000.00 allowed secured claim over approximately 63 months, at an interest rate of 13.5 percent. The total paid under this plan would be $28,728.00. The remaining amount due under the mortgage is relegated to Class Four unsecured debt, to be paid at $46 per month for 28 months and shared pro rata by all Class Four creditors. This is the total amount the debtor will pay to Shawmut; the debtor will not have to pay the arrearages separately.

Implicated here are the application and interrelationship of certain provisions of the bankruptcy code. We will consider 11 U.S.C. § 506(a):

> An allowed secured claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

This provision permits the debtor to "cram down" an undersecured claim to reflect the present value of the collateral. The creditor's claim is converted to secured debt up to the present value of the property and unsecured debt as to the remainder. *See In re Bender*, 86 B.R. 809, 811 (Bankr. E.D.Pa.1988) (discussing section 506(a)).

We also will consider the effect of 11 U.S.C. § 1322(b)(2):

> [T]he plan may ... modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

The anti-modification provision applies to claims secured only by an interest in real property that is the debtor's principal residence. Where a claim is secured by other collateral in addition to the realty, the creditor's rights may be modified. *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123, 128–29 (3d Cir.1990).

The debtor sought to avail himself of 11 U.S.C. § 1322(b)(5):

> [N]otwithstanding [section 1322(b)(2), the plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

This cure-and-maintain option gives the debtor an alternative to cramming down the creditor's claim and paying it off within the chapter 13 plan. *In re Cole*, 122 B.R. 943, 950 (Bankr.E.D.Pa.1991); 5 *Collier on Bankruptcy* ¶ 1322.09, at 1322–22 (King ed., 15th ed. 1990).

Finally, we will consider the requirements of 11 U.S.C. § 1322(c):

> The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

We emphasize that the reorganization plan at issue here is being measured against only these statutes. The defense of the plan and the objections levelled against it were based on these statutory provisions. Both the bankruptcy court and the district court decided this case on the basis of these provisions. Accordingly, our approach will be similarly limited. We will give particular emphasis to the requirements of section 1322(b)(5).

### B.

■ We are required to construe the preceding statutory provisions, and our review is plenary.

> Because in bankruptcy cases the district court sits as an appellate court, our review of the district court's decision is plenary. This court exercises the same review over the district court's decision that the district court may exercise. The findings of fact by the bankruptcy court are reviewable only for clear error. Legal questions are, of course, subject to plenary review.

*Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988) (citations omitted).

### II.

To acquire a proper perspective on the issues before us, we will now set forth the factual background in more detail and review the proceedings in both the bankruptcy and district courts. The debtor, Dennis E. Sapos, borrowed $34,000.00 in September 1984 from Dellwood Corporation. Dellwood subsequently assigned the mortgage and note to the appellant, Provident Institution of Savings, now known as Shawmut Mortgage Company. Sapos used the funds to purchase real estate in Rankin Borough, Allegheny County. The loan was repayable over 30 years at 13.5 percent interest; monthly installments were "$389.44 for principal and interest, plus such further sums as may be required for property tax and insurance escrow accounts." Bankr. Ct.Op. at 2. Shawmut acknowledges:

> The collateral which is the subject of the Mortgage includes the Residence together with "... the following described household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, wall to wall carpeting ...."

Shawmut Br. at 9. In addition, the mortgage was secured by rents, profits and appliances. 132 B.R. at 528, 531 n. 2.

The Veterans Administration (VA) served as guarantor for the loan. The house on the property became the debtor's primary residence.

The debtor did not pay his monthly mortgage installments for May 1988 or thereafter. In April 1989, Shawmut commenced foreclosure proceedings in federal district court, which entered default judgment in Shawmut's favor in September 1989. The debtor filed his chapter 13 petition on January 10, 1990, one day before the scheduled foreclosure sale.

As stated before, Shawmut filed a proof of claim for $44,989.53, which included

$11,188.12 in past due mortgage payments, late charges and foreclosure costs. App. at 18–19. The debtor filed a proposed chapter 13 plan in February 1990, which the court approved on an interim basis in March. Included in this plan as approved was a requirement that the debtor make adequate-protection payments of $620.00 per month to the trustee in bankruptcy. Bankr.Ct.Op. at 2. Part of this sum was then to be disbursed to Shawmut. However, the debtor did not stay current in his payments, resulting in further arrearages in his obligations to Shawmut. Shawmut Br. at 14. The trustee reports that the debtor will be assessed interest on the missed payments. Trustee Br. at 22–23.

Also in February, the debtor filed an adversary claim against Shawmut and the VA under 11 U.S.C. § 506(a), the cramdown provision. The debtor and Shawmut stipulated that the net present value of the real estate was $17,000.00. Shawmut Br. at 11; 132 B.R. at 530 n. 1. The bankruptcy court recognized an allowed secured claim in this amount. Bankr.Ct.Op. at 2. The Veterans Administration failed to answer and was held in default. *Id.*

The debtor filed an amended plan on October 29, 1990. This plan proposed two methods of paying the allowed secured claim of $17,000.00. The first provided for payment of monthly installments approximately equal to the monthly installments under the original mortgage agreement, and for interest at the original rate. On this schedule, the allowed secured claim would be paid off in five years. Trustee Br. at 10–11. The second method proposed payment of the allowed secured claim over 30 years, the term of the original mortgage. This would have reduced the monthly installments below the amount specified in the agreement. The trustee reports, "The second option under the October 29 plan was rejected by the Bankruptcy Court as an impermissible modification of the rights of Shawmut." *Id.* at 11.

The debtor then filed a second amended plan on December 4, 1990, which is the subject of our inquiry here. The plan has a term of 50 months from December 1, 1990.

App. at 149. This plan includes repayment of the mortgage obligation as a Class Two secured claim in the amount of $17,000.00. *Id.* at 150. The debtor is to pay this total, plus interest at the contractual amount of 13.5 percent, over "Approx[imately] 63 months." *Id.* Monthly payments are set at $389.44, plus taxes and insurance, for a total of $456.00. *Id.* This amount is the same as was due each month under the original mortgage. Shawmut Br. at 13. If the debtor makes these payments for 63 months, the total paid will be $28,728.00. The remaining balance on the mortgage, reported in the reorganization plan as $23,927.69, is relegated to Class Four—Allowed Unsecured Claims. Class Four creditors will share, on a pro rata basis, the amount of $46.00 per month for 28 months. App. at 151.

Shawmut filed objections to the second amended plan. *Id.* at 97–102. The bankruptcy court considered these objections at a hearing on December 19, 1990, *id.* at 103–45, and confirmed the plan.

### III.

After reviewing the facts, the bankruptcy court rejected Shawmut's contentions. Shawmut argued first that the proposed plan contravened section 1322(b)(2), which contains the anti-modification provision concerning claims secured only by a security interest in property that is the debtor's principal residence. The court rejected this argument on the grounds that the cram down did not modify Shawmut's rights within the meaning of the statute as interpreted by this court in *Wilson*. Bankr.Ct. Op. at 4–5. The court also rejected the argument that the inclusion of the $11,188.12 arrearage in the $17,000.00 allowed secured claim was an impermissible modification of Shawmut's rights. *Id.* at 5–6. The court stated that the plan, which provides for payment of interest on the secured claim, leaves Shawmut in a better position than is required under this court's case law, which does not require payment of interest on arrearages. *Id.* at 7–8 (citing *Appeal of Capps*, 836 F.2d 773, 775 (3d Cir.1987)); *see also* Trustee Br. at 19–20

(describing benefit to Shawmut of debtor's plan). Finally, the court found that the plan did not contravene 11 U.S.C. § 1325(a)(4). Section 1325(a) mandates confirmation of a plan if it meets certain conditions, including a requirement that the payment from the estate of allowed unsecured claims be not less than the amount these creditors would receive if the estate were liquidated in a chapter 7 proceeding. Bankr.Ct.Op. at 8–10.

Shawmut appealed to the district court from the order confirming the December 4 plan. The district court determined first that the bankruptcy court's restructuring of the mortgage obligation was consistent with 11 U.S.C. § 506(a), the cram-down provision, and 11 U.S.C. § 1322(b)(5), the cure-and-maintain provision. 132 B.R. at 530–31. The court concluded that "the Plan falls squarely within the ambit of 11 U.S.C. § 1322(b)(5) and, therefore, is *not* a modification of Shawmut's rights." *Id.* at 531 n. 2. The court thus found that the plan did not implicate section 1322(b)(2); even if it did, the note did not come within the scope of the anti-modification provision of section 1322(b)(2), because the note was not secured only by the debtor's residence. *Id.* at 530, 531 n. 2.

The court rejected Shawmut's argument that the debtor should have been required to pay both the $11,188.12 in arrears and an additional $17,000.00, the amount of the allowed secured claim. *Id.* at 531. Inclusion of the $11,188.12 arrearages in the $17,000.00 secured claim was found to be appropriate and to refute Shawmut's argument that the debtor was avoiding payment of the arrearages. *Id.* The court allocated the balance of the $17,000.00, or the sum of $5,811.88, to principal. *Id.* The debtor's further agreement to pay interest on the entire amount, even though not required under the case law of this circuit, was found to "provide[ ] a distinct monetary advantage to Shawmut." *Id.* The court also decided that the plan did not violate section 1325(a)(4), the provision relating to compensation of allowed unsecured claims in a hypothetical chapter 7 proceeding. *Id.*

at 532. Finally, the court found that the plan was not proposed in bad faith. *Id.*

Reduced to its essence, Shawmut's contention before us is that the plan is deficient because it does not "provide for the curing of any default within a reasonable time and maintenance of payments [on the] secured claim" as set forth in 11 U.S.C. § 1322(b)(5). Shawmut agrees that the total default was $11,188.12 but argues that inclusion of this amount in the allowed secured claim does not constitute a curing of the default.

## IV.

■ Our discussion of applicable law must begin with the threshold question whether *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), prevents any modification of a mortgagee's rights in a chapter 13 reorganization, notwithstanding section 1322(b)(2) ("the plan may modify the rights of holders of secured claims"). In *Dewsnup,* the Court had before it the application of 11 U.S.C. § 506(d): "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void...." The debtor argued that "secured claim" in section 506(d) had the same meaning as it did in section 506(a), and, therefore, the undersecured portion of the lien was void. In rejecting this view, the Court held that section 506(d) could not be used by a chapter 7 debtor to void the undersecured portion of a creditor's lien. 112 S.Ct. at 778.

The Court of Appeals for the Second Circuit, in *In re Bellamy,* 962 F.2d 176 (2d Cir.1992), decided that the interpretation given section 506(a) in *Dewsnup,* a chapter 7 liquidation, should not apply in the context of a chapter 13 reorganization. We agree with the court's reasoning:

> *Dewsnup* did not hold that "secured claim" in other provisions of the Code was never to be construed as it was in § 506(a). Its analysis was limited to § 506(d) and the facts before it. *Id.* at n. 3. Hence, whether "secured claim" has the same meaning as it does in a § 506(a) must be determined with reference to the

particular Code provision at issue. In light of the fact that certain Code provisions implicitly state that the term "secured claim" is not to be defined as in § 506(a), *see* Code § 1111(b)(2), it is reasonable to assume "secured claim" ordinarily has the meaning assigned to it in § 506(a), unless to read it in that fashion would be "contrary to basic bankruptcy principles." 112 S.Ct. at 779. *See, e.g., United States v. Goldbaum*, 879 F.2d 811, 813 (10th Cir.1989) (as a general rule of statutory construction, if a statute specifies exceptions to its general application other exceptions not mentioned are excluded); *see also* S.Rep. No. 989, 95th Cong., 2d Sess. (68), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5854 (throughout the bill, references to secured claims are only to the claim determined to be secured under § 506(a), and not to the full amount of the creditor's claim).

The differing language of § 506(d) and § 1322(b)(2)—with respect to how the phrase "secured claim" is used—suggests that the *Dewsnup* analysis does not govern construction of § 1322(b)(2). *In re Bellamy*, 962 F.2d at 182–83. We also note the *Dewsnup* Court's cautionary language about the scope of its judgment:

> Hypothetical applications that come to mind and those advanced at oral argument illustrate the difficulty of interpreting [section 506] in a single opinion that would apply to all possible fact situations. We therefore focus upon the case before us and allow other facts to await their legal resolution on another day.

112 S.Ct. at 778. Accordingly, we hold that the *Dewsnup* Court's interpretation of section 506 in a chapter 7 liquidation does not apply in this chapter 13 reorganization. We are thus free to address the issues concerning sections 1322(b)(2) and (b)(5) and section 506(a) that Shawmut presents in this appeal.

## V.

We hold that the plan does not contravene the anti-modification provision of section 1322(b)(2):

[T]he plan may modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

(emphasis supplied). Shawmut argues that the plan modified its rights in contravention of the emphasized statutory language. The district court relied on our decision in *Wilson v. Commonwealth Mortgage Corp.*, 895 F.2d 123 (3d Cir.1990), and it is to an analysis of that case that we now turn.

### A.

First, we recognized in *Wilson* that when a creditor takes a security interest in personalty (in that case, "any and all appliances") in addition to realty, the creditor puts the claim outside the anti-modification provision of section 1322(b)(2). 895 F.2d at 129 (citing 5 *Collier on Bankruptcy* ¶ 1322.06, at 1322-14–15). Second, *Wilson* is this court's leading case for the proposition that application of section 506(a) to cram down a creditor's claim does not modify the claim under section 1322(b)(2). Rather, the "secured claims" protected by section 1322(b)(2) are those that remain *after* the application of section 506(a). 895 F.2d at 127.

The first principle applies in the case at bar. As stated by the district court, the note is secured by wall-to-wall carpeting, rents and profits. 132 B.R. at 530, 531 n. 2. The teachings of *Wilson* therefore apply. Banks and mortgage companies provide the printed forms for mortgagors. Notwithstanding the precise language of the statute, the forms in *Wilson* and in the case before us attempt to reach collateral that is personalty and not realty. At oral argument, counsel for the debtor placed the issue in proper perspective:

> COUNSEL: [The banks have] chosen to put themselves out of the requirement of the *Wilson* court. Banks now know that issue is there. They have not changed their forms any. If they want to try and get every last piece of collateral and fall

within the control of the *Wilson* court, I think then [they may not seek the protection of section 1322(b)(2)].

Trans. Oral Arg. at 27. *Accord In re Bender*, 86 B.R. 809, 814 (Bankr.E.D.Pa. 1988) ("boilerplate" creating security interest in personalty takes mortgage contract outside scope of section 1322(b)(2) anti-modification provision).

### B.

■ The second teaching of *Wilson* also is applicable: Use of section 506(a) to cram down a creditor's claim does not modify the creditor's claim within the meaning of section 1322(b)(2). 895 F.2d at 127. To the extent that the claim is secured following cram down, Shawmut's rights have not been modified, because it will continue to receive monthly payments in the contractual amount and will receive the contractual rate of interest. The plan as approved does not contravene section 1322(b)(2).

### VI.

■ The trustee and counsel for the debtor assert that the confirmed plan provides for a cure of arrearages under the authority of section 1322(b)(5). Trustee Br. at 18–22; Trans. Oral Arg. at 29. The district court also noted that "the Plan falls squarely within the ambit of § 1322(b)(5)". 132 B.R. at 531 n. 2. We must now consider whether the admixture of payment of arrearages and payment of the balance due on mortgage principal accords with section 1322(b)(5). We hold that it does not.

### A.

Section 1322(b)(5) has been applied most commonly in cases where a debtor has defaulted and triggered an acceleration clause in the mortgage. In such cases, courts have held that section 1322(b)(5) permits the de-acceleration of the mortgage: The debtor can reinstate the regular payment schedule set out in the mortgage, even though the payment schedule extends beyond the life of the chapter 13 plan. *Matter of Roach*, 824 F.2d 1370, 1374–75 (3d Cir.1987); *Grubbs v. Houston First*

*Am. Sav. Ass'n*, 730 F.2d 236, 237 (5th Cir.1984) (en banc); *In re Taddeo*, 685 F.2d 24, 26 (2d Cir.1982).

Although a comprehensive definition of "cure" may not be possible, one court has made the following observation:

> [W]hat the term refers to is the restoration of the way things were before the default. Thus, the plain meaning of "cure," as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the *status quo ante.*

*Matter of Clark*, 738 F.2d 869, 872 (7th Cir.1984).

■ Any plan that provides for the curing of default should state specifically how the cure is to be effected independent of other plan provisions. It should not mix "curing" apples with "maintenance of payments" oranges. Combining the two may create irresoluble conflicts regarding the payment schedules. The statute requires that arrearages be cured "within a reasonable time," and this has been interpreted as meaning within the duration of the chapter 13 plan, which may not exceed five years. *In re Cole*, 122 B.R. 943, 950 (Bankr. E.D.Pa.1991); *In re Keays*, 36 B.R. 1018, 1019 (Bankr.E.D.Pa.1984). In contrast, a schedule for maintaining payments of unpaid mortgage principal may be approved even though "the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). *See Matter of Roach*, 824 F.2d at 1374–75. In applying section 1322(b)(5), courts must assure that the debtor's plan both cures arrearages and maintains payments. We do not intimate that a single set of payments purporting to do both will never be acceptable. We emphasize only that the time permitted for each type of payment may differ, and that in drafting a payment schedule, care must be taken to accommodate the distinction.

### VII.

This brings us then to the plan in the instant case. We find several problems with it. It purports to follow section 1322(b)(5), but it combines both arrearages and unpaid mortgage principal into one

claim and then provides for payment of this claim without distinguishing between these two separate components. As explained in the preceding discussion, the failure to distinguish the components of the combined payments makes the plan unacceptable under section 1322(b)(5).

 The plan also applies section 506(a) to cram down the creditor's claim and then includes arrearages as part of the allowed secured claim. We find this application of section 506(a) inappropriate, because we accept the view of the court in *In re Cole,* 122 B.R. 943 (Bankr.E.D.Pa.1991).

### A.

*Cole* was a chapter 13 action in which the mortgagee filed a proof of claim for $14,604.42 in arrears and a principal balance of $32,551.69, a total claim of $47,156.11. The debtor filed an adversary proceeding seeking, among other relief, to apply section 506(a) to reduce the claim to the present market value of the collateral. After making certain reductions in the arrearage amount, the court combined the amount in arrears ($12,801.05) and the remaining principal balance ($32,551.69) to arrive at a total allowed claim of $45,352.74. The court then determined the present market value of the property to be $34,000.00. The court bifurcated the total allowed claim into a secured portion of $34,000.00 and an unsecured portion for the balance.

The court then went on to hold that the debtor could not cram down the arrearages under section 506(a):

> [W]e hold that, if the Debtor is to propose a "feasible" Chapter 13 plan which will overcome the Trustee's motion to dismiss, she must not only continue to maintain her regular monthly mortgage payments, as she alleges that she has done, but she must also liquidate all of the arrearages owed to the Mortgagee in the 60–month period beginning on the date that payments first become due.

122 B.R. at 951. In addition to stressing that the text of section 1322(b)(5) requires both maintenance of the mortgage payments and the curing of all defaults, the court reasoned that permitting the debtor to treat the arrearages as proposed would reward a debtor who had not kept current in payments before filing for reorganization. *Id.* The court also cited several cases recognizing a distinction between the "arrearages" that are the subject of section 1322(b)(5) and "secured claims" dealt with elsewhere in the bankruptcy code. *Id.* at 949 (citing *In re Vitelli,* 93 B.R. 889 (E.D.Pa.1988); *In re Small,* 65 B.R. 686 (Bankr.E.D.Pa.1986), *aff'd,* 76 B.R. 390 (E.D.Pa.1987); *In re Bender,* 86 B.R. 809 (Bankr.E.D.Pa.1988)).

In *Vitelli,* the court held that the mortgagee was not entitled to costs and fees under 11 U.S.C. § 506(b) for collection of arrearages, because section 506(b) authorizes recovery of costs and fees incurred in collection of an "allowed secured claim" determined through application of section 506(a). 93 B.R. at 895. "[A] statement of a mortgage setting forth the alleged amount of mortgage arrears which must be paid through a Chapter 13 Plan to cure mortgage delinquencies is distinct from a 'secured claim,' which represents the entire balance owed on a mortgage and is the focal point of § 506(b)." *Id.* at 894; *accord Small,* 65 B.R. at 690 (mortgagee was not entitled to costs and fees under section 506(b) for collection of arrearages; emphasizing "the distinction between the 'secured claim,' which relates to the entire balance owed to the mortgage, as opposed to the 'default,' which is the arrearages").

*Bender* concerned a creditor that filed a proof of claim which the debtor then sought to cram down. The creditor argued that its proof of claim was not subject to the lien-voiding provision of 11 U.S.C. § 506(d), because the creditor was seeking only arrearages, not the total amount due on the mortgage. 86 B.R. at 812. The court rejected this contention on the grounds that the decision to cure a default was left to the debtor and could not be imposed by the creditor. *Id.* at 813. The court recognized that " 'the curing of defaults pursuant to section 1322(b)(5) is a right conceptually distinct from chapter 13 cramdown' " *Id.* (quoting 5 *Collier on Bankruptcy* ¶ 1322.09, at 1322–20).

 In each of these cases, the court relied on the general principle that the "se-

cured claim" treated in section 506(a) refers only to the entire balance of principal due on the underlying mortgage. We agree with this analysis and conclude that section 506(a) is "inapplicable to any pseudo-'secured claim' for mortgage arrears." *Vitelli*, 93 B.R. at 895.

The bankruptcy court in the present case appears to have granted the type of relief denied in *Cole*. The debtor proposes to pay the $17,000.00 allowed secured claim with interest, but this figure includes arrearages of $11,188.12; instead of paying $17,000.00 in unpaid principal, the debtor will pay only $5,811.88. Such a result may not be permitted under the reasoning of *Cole*.

The bankruptcy court distinguished *Cole* on the grounds that the debtor there sought to allocate arrearages to the unsecured portion of the claim, while the debtor in the present cases proposes to include the arrearages in the secured portion of the claim. Bankr.Ct.Op. at 7. However, the holding of the *Cole* court, as set out above, does not appear to be so limited. The potential inequity may be greater if the arrearages are allocated to unsecured debt, but the inequity does not disappear if the arrearages are allocated to secured debt.

We hold that the arrearages do not qualify as a "secured claim" subject to a section 506(a) cram down and that the debtor's plan therefore does not comply with sections 1322(b)(5) and 506(a).

### B.

▮▮▮ Moreover, as noted before, the plan provided for payments extending over "Approx[imately] 63 months." To the extent that these payments represent a curing of arrearages under section 1322(b)(5), the payments may not extend beyond a reasonable time, which as previously indicated cannot exceed the statutory limitation of 60 months in a reorganization plan. Payments under a plan that cures any default must be completed within the life of the plan, which is not to exceed five years. 11 U.S.C. § 1322(c).

### C.

One final note is appropriate. Shawmut argues that the plan does not comply with section 1325 because it was not proposed in good faith and it does not guarantee Shawmut the same amount on the unsecured claim that Shawmut would receive if the debtor's estate were liquidated under chapter 7. Shawmut Br. at 18, 26–27; *see* 11 U.S.C. §§ 1325(a)(3), (4). As discussed above, we hold that the plan contravenes the requirements of section 1322(b)(5), and thus we do not reach these additional contentions. It bears emphasis also that we have not considered whether a plan involving a proper treatment of a claim for pre-petition and post-petition arrearages and unpaid principal on the mortgage note— including one providing for cram down of Shawmut's allowed claim—would be acceptable under any other provision of the bankruptcy code. We have limited our approach to this case to the narrow issues discussed by the bankruptcy and district courts and do not intimate, one way or another, what other avenues are available to the debtor.

### VIII.

In sum, we hold only that (1) a Chapter 13 debtor with an undersecured debt, whether that debt be secured solely by residential real estate or by realty and personalty, may resort to bifurcation under section 506(a), and (2) a debtor who bifurcates an allowed claim under section 506(a) can use the cure and maintenance provisions of section 1322(b)(5) only if the debtor both pays arrearages within a reasonable time and continues to make the monthly payments due in accordance with the original terms of the note until the principal has been paid in an amount equal to the value of the property established under section 506(a).[1] Applying these precepts to the case at bar, we cannot affirm the judgment of the district court that affirmed the confirmation of the plan. We do not prescribe the details of any amended plan; we leave it to the debtor to make a new submission in the bankruptcy court.

---

1. Such a plan could not be approved over the objections of the creditor unless it met the requirements set out in 11 U.S.C. § 1325. We express no view regarding the acceptability of Sapos' plan under section 1325.

The judgment of the district court will be reversed and the cause remanded with a direction for that court to vacate the bankruptcy court order confirming the plan and to remand to the bankruptcy court for further proceedings in accordance with the foregoing.