

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1994

# Hammond v. Commonwealth Mortgage Corporation

Precedential or Non-Precedential:

Docket 93-1747

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Hammond v. Commonwealth Mortgage Corporation" (1994). *1994 Decisions.* Paper 42.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/42

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————————

No. 93-1747

——————————

IN RE:

MICHAEL HAMMOND; JEANETTE HAMMOND,
Debtors


MICHAEL HAMMOND; JEANETTE HAMMOND

v.

COMMONWEALTH MORTGAGE CORPORATION OF AMERICA


COMMONWEALTH MORTGAGE CORPORATION OF AMERICA, L.P.,
Appellant

——————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 90-05606)

——————————

Argued:  February 17, 1994

PRESENT:  BECKER, HUTCHINSON and COWEN, Circuit Judges

(Opinion Filed  June 9, 1994        )

——————————

Lawrence T. Phelan, Esquire
Peter C. Cilio, Esquire          (Argued)
Federman & Phelan
Suite 900
Two Penn Center Plaza
Philadelphia, PA      19103
          Attorney for Appellant

Susan L. DeJarnatt, Esquire      (Argued)
Community Legal Services
3207 Kensington Avenue

Philadelphia, PA    19134-1917
                Attorney for Michael and Jeanette Hammond

_____

HUTCHINSON, <u>Circuit Judge</u>.

Appellant, Commonwealth Mortgage Corporation of America ("Commonwealth"), appeals an order of the United States District Court for the Eastern District of Pennsylvania affirming a decision of the United States Bankruptcy Court for that district. The bankruptcy court had permitted appellees, Michael and Jeanette Hammond (the "Hammonds" or the "debtors"), to bifurcate Commonwealth's claim against the Hammonds into secured and unsecured components pursuant to 11 U.S.C.A. § 506(a). In so doing, the bankruptcy court effectively limited Commonwealth's mortgage claim to the fair market value of the premises securing the mortgage. On appeal Commonwealth argues a bifurcation that has this effect is contrary to the recent United States Supreme Court decision of <u>Nobelman v. American Savings Bank</u>, 113 S. Ct. 2106 (1993), concerning the interplay between section 506(a) and section 1322(b)(2) of the Bankruptcy Code of 1978.[1] We conclude that <u>Nobelman</u> overrules only one of the two rationales underlying our decisions in <u>Wilson v. Commonwealth Mortgage Corp.</u>, 895 F.2d

_____

[1]In its brief, Commonwealth, relying on <u>Stendardo v. Federal Nat'l Mortgage Ass'n (In re Stendardo)</u>, 991 F.2d 1089, 1094–95 (3d Cir. 1993), also argued that merger of the mortgage into the foreclosure judgment eliminated any additional security interest the mortgage provided to the mortgagee. Commonwealth conceded at oral argument that it waived this argument by its failure to raise it in the district court. Thus, we do not consider it. See <u>Frank v. Colt Indus., Inc.</u>, 910 F.2d 90, 100 (3d Cir. 1990).

123 (3d Cir. 1990), and Sapos v. Provident Institution of Savings, 967 F.2d 918 (3d Cir. 1992).  Therefore, we will affirm the district court.

## I.  Factual & Procedural History

The Hammonds purchased their home at 5636 North 11th Street, Philadelphia, Pennsylvania, on June 15, 1984.  They financed the purchase with a loan from Jersey Mortgage Company, which has since been assigned to Commonwealth.  The assignment made Commonwealth the holder of a $22,500.00 purchase money mortgage on the Hammonds' home, as well as an additional security interest in:

> any and all appliances, machinery, furniture
> and equipment (whether fixtures or not) of
> any nature whatsoever now or hereafter
> installed in or upon said premises . . . .

Appendix ("App.") at 15.

On December 15, 1987, Commonwealth foreclosed the mortgage and obtained a foreclosure judgment for $30,726.10.[2] The foreclosure eventually caused the Hammonds to file a Chapter 13 bankruptcy petition in the Eastern District of Pennsylvania on January 8, 1990.  On February 8, 1990, Commonwealth filed a secured claim for $42,969.93.[3]

---

[2] On August 30, 1989, damages were reassessed at $40,407.80.
[3] Commonwealth's claim was computed as follows:

| | |
|---|---|
| Principal | $22,108.71 |
| Interest to the date of bankruptcy | $13,165.59 |
| Late Charges | $  649.43 |

The Hammonds thereafter filed an adversary proceeding, seeking to limit Commonwealth's allowed secured claim to the fair market value of their home by bifurcating the claim into secured and unsecured components pursuant to 11 U.S.C.A. § 506. The parties stipulated that the fair market value of the Hammonds' home is $25,000.00.

On July 30, 1990, the bankruptcy court agreed with the Hammonds and entered an order limiting Commonwealth's secured claim to $25,000.00. See Hammond v. Commonwealth Mortgage Co. (In re Hammond), No. 90-10093 (Bankr. D.N.J. July 30, 1990).[4] The order provided for the Hammonds to repay Commonwealth's secured claim of $25,000.00 at an interest rate of ten percent over sixty-months in accord with the debtors' plan. The bankruptcy court confirmed the debtors' plan on August 21, 1990. The plan provides:

1. The future earnings of the debtor are submitted to the supervision and control of the trustee and the debtor shall pay to the trustee the sum of $ 666 on a monthly basis for a period of 60 months.

| | |
|---|---|
| Escrow Deficit | $ 4,006.57 |
| Mortgage foreclosure expenses | $ 3,039.63 |
| TOTAL | $42,969.93 |

[4]The Hammonds filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Pennsylvania, but Judge Wizmur, a United States Bankruptcy Judge for the District of New Jersey, entered the order from which this appeal was taken. At the time these proceedings were taking place, the bankruptcy court for the Eastern District apparently had a large backlog. To reduce the backlog, certain cases were transferred either to the United States Bankruptcy Court for the District of New Jersey or perhaps assigned by designation to New Jersey bankruptcy judges.

5

>       2. From the payments so received, the
>          trustee shall make disbursements as
>          follows:
>
>                           * * *
>
>          (b) Holders of allowed secured claims shall
>              retain the liens securing such claims and
>              shall be paid as follows:
>              –Lien of Commonwealth in excess of
>                  market value to be avoided. Allowed
>                  secured claims to be paid inside
>                  plan.

App. at 21.

Commonwealth appealed the bankruptcy court's order of July 30, 1990 to the district court. It did not appeal the confirmation order. On July 2, 1993, the district court affirmed the bankruptcy court's decision to bifurcate Commonwealth's claim into secured and unsecured portions. At the same time the district court vacated and remanded the case for additional proceedings to determine the value of any remaining security. Hammond v. Commonwealth Mortgage Co. (In re Hammond), 156 B.R. 943, 948–49 (E.D. Pa. 1990). This timely appeal followed.

II. Jurisdiction & Standard of Review

The statute which governs jurisdiction over appeals from bankruptcy court decisions is 28 U.S.C.A. § 158. Section 158 provides in relevant part:

>       (a) The district courts of the United States
>           shall have jurisdiction to hear appeals from
>           final judgments, orders, and decrees . . . of
>           bankruptcy judges entered in cases and
>           proceedings referred to the bankruptcy judges
>           under section 157 of this title . . . .

6

                              * * *

                    (d)  The courts of appeals shall have
                    jurisdiction of appeals from all <u>final</u>
                    decisions, judgments, orders, and decrees
                    entered under subsections (a) and (b) of this
                    section.


28 U.S.C.A. § 158(a),(d) (West 1993) (emphasis added).  We

conclude that the district court had appellate jurisdiction under

section 158(a), and we have jurisdiction over the district

court's order under section 158(d).[5]

        Review of the district court order involved in this

case presents questions of law.  Therefore, we exercise plenary

review.  <u>See</u> <u>Sapos</u>, 967 F.2d at 922; <u>Dent v. Cunningham</u>, 786 F.2d

173, 175 (3d Cir. 1986).

---

[5]The district court's order vacating the bankruptcy court's order
and remanding the case for a determination of the value of the
additional security interest raises the question whether the
district court's order was a "final order" for purposes of
section 158(d).  We have expansively interpreted the phrase
"final order" as used in section 158(d).  <u>See</u> <u>In re Porter</u>, 961
F.2d 1066, 1072 (3d Cir. 1992) ("[B]ankruptcy cases have
traditionally been subject to more lenient finality rules than
other cases . . . . '[W]hen the bankruptcy court issues what is
indisputably a final order, and the district court issues an
order affirming or reversing, the district court's order is also
a final order . . . .'") (quoting <u>In re Marin Motor Oil, Inc.</u>,
689 F.2d 445, 449 (3d Cir. 1982)).  We believe the district
court's order is final within the meaning of section 158(d) and
we have appellate jurisdiction to review it.

III. <u>Analysis</u>

This appeal concerns the interaction between two provisions of the Bankruptcy Code: section 506(a) and section 1322(b)(2).[6] Section 506(a) provides, in pertinent part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim . . . .

11 U.S.C.A. § 506(a) (West 1993). In essence section 506(a) limits a creditor's secured claim to the value of its collateral. <u>See</u> <u>United States v. Ron Pair Enters., Inc.</u>, 109 S. Ct. 1026, 1029 & n.3 (1989).

Section 1322(b)(2) governs the contents of a Chapter 13 bankruptcy plan and provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may--
>
>         * * *
>
>    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of

---

[6]In their brief, the Hammonds mention the supportive effect the plan's confirmation may have on their position as to the amount of the bank's secured claim. In supplemental briefing, however, both parties agreed that issue did not affect the merits. Therefore, we will not discuss it further.

8

> unsecured claims, or leave unaffected
> the rights of holders of any class of
> claims . . . .

11 U.S.C.A. § 1322 (West 1993). This section, which limits a party's ability to modify the rights of a lien on real property that is a debtor's principal place of residence, is known as an "antimodification provision." Sapos, 967 F.2d at 921. The specific question which arises when one considers section 506(a) and section 1322 together is whether section 1322(b)(2) precludes a Chapter 13 debtor from relying on section 506(a) to modify the unsecured portion of an undersecured mortgage claim, or whether the debtor is entitled to bifurcate a secured claim pursuant to section 506(a).

In Wilson and Sapos, this Court considered the interplay between sections 506(a) and 1322(b)(2). In those cases we held that section 1322(b)(2) does not prohibit modification of the unsecured component of an undersecured mortgage. See Sapos, 967 F.2d at 926; Wilson, 895 F.2d at 127-28. Moreover, we held that section 1322(b)(2)'s antimodification clause does not apply when the creditor has an additional security interest in collateral other than the real property in which the debtor resides because section 1322(b)(2)'s express terms cover claims secured only by a security interest in the debtor's principal residence. See Sapos, 967 F.2d at 925-26; Wilson, 895 F.2d at 128.

The district court, considering itself bound by Sapos and Wilson, affirmed the bankruptcy court's ruling bifurcating

Commonwealth's mortgage claim into secured and unsecured portions because Commonwealth's mortgage was secured by a lien on the debtors' personal property as well as the real property that was their home.  As the district court recognized, this case is on all fours with Wilson.  There too the mortgagee's claim was secured by "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises" in addition to the lien on the mortgage debtors' residence.  Wilson, 895 F.2d at 124.

Commonwealth argues that we should overrule our opinions in Wilson and Sapos because of the Supreme Court's recent decision in Nobelman.  Nobelman did expressly overrule the holding in Wilson and Sapos that section 1322(b)(2) does not preclude a debtor from modifying the undersecured portion of a mortgage.  Nobelman, 113 S. Ct. at 2109, 2111.  The Supreme Court stated: "Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence."  Id. at 2111.

The Supreme Court's opinion in Nobelman, however, did not expressly address our alternate rationale for our decisions in Wilson and Sapos.  In those cases, we also held that a mortgagee who has an additional security interest in property other than the real estate which is the mortgagors' primary residence cannot claim any benefit from section 1322(b)(2)'s antimodification provision and therefore such a mortgagee's claim can be bifurcated under section 506(a).  See Sapos, 967 F.2d at

10

925-26; Wilson, 895 F.2d at 128. The district court, in the instant case, recognized that the record in Nobelman indicates that there the mortgagee also held an additional security interest in "the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents." Hammond v. Commonwealth Mortgage Company, 156 B.R. at 947 n.6 (quoting In re Nobelman, 129 B.R. 98, 99 (N.D. Tex. 1991), aff'd, 968 F.2d 483 (5th Cir. 1992), aff'd, 113 S. Ct. 2106 (1993)). The district court in Nobelman had held, contrary to Sapos and Wilson, that this additional security interest did not matter, but neither the United States Court of Appeals for the Fifth Circuit nor the Supreme Court addressed the issue on appeal. Therefore, the district court in the case now before us felt this Court's alternate rationale in Wilson and Sapos was still controlling and, applying principles of stare decisis, affirmed the bankruptcy court on this ground.

Commonwealth contends, however, that Nobelman implicitly overrules our alternate holding in Wilson and Sapos because the Nobelman mortgage also had an additional security interest which the Supreme Court failed to give any effect. Commonwealth points out that the district court in Nobelman expressly held the debtors' argument that the additional security interest took their mortgage out of the protection of the antimodification clause was "without merit." Nobelman, 129 B.R. at 104. Commonwealth contends that the Supreme Court's failure to discuss the additional security interest that the Nobelman mortgage provided indicates such an additional interest in

11

collateral found at or on the debtors' residence is not significant. Therefore Commonwealth concludes this panel can and should overrule Sapos and Wilson in their entirety. It argues we should decide instead that a security interest in fixtures or personal property on the mortgaged premises does not preclude a mortgagee from taking advantage of the antimodification provision that section 1322(b)(2) provides for a lien secured by mortgages on a debtors' principal residence. Commonwealth would have us consider the additional security interest provided for in its mortgage as meaningless standard language that gives it no additional security as a practical matter.

In Wilson, we addressed and rejected an identical argument that an additional security interest in personal property on or in the real estate securing a residential mortgage has no real value and can be ignored under the maxim de minimis non curat lex.[7] See Wilson, 895 F.2d at 129. We held in Wilson that section 1322(b)(2)'s language plainly states that a mortgagee who has an additional security interest gets no protection from the antimodification clause of section 1322(b)(2). Id. ("The language of section 1322(b)(2) is unambiguous. The language of the bankruptcy judge bears repeating: 'If Commonwealth wishes otherwise, it should delete such language from its agreements.'"). We also relied on Collier on Bankruptcy to buttress our holding that creditors who demand

---

[7]The Latin means: "The law does not care for, or take notice of, very small or trifling matters. The law does not concern itself about trifles." Black's Law Dictionary 388 (5th ed. 1979).

12

additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security. Id. (citing 5 Collier on Bankruptcy ¶ 1322.06 at 1322-14-15).

Finally, Commonwealth argues that Wilson and Sapos were improperly decided and points to the legislative history underlying section 1322(b)(2). It argues that this section was included to implement Congress's intent to protect lenders of residential mortgages because they provide a valuable economic and social service when they make such funds available. See Grubbs v. Houston First Am. Sav. Ass'n, 730 F.2d 236, 246 (5th Cir. 1984) (in banc) ("This [section] was apparently in response to perceptions . . . that, home-mortgagor lenders, performing a valuable social service through their loans, needed special protection against modification . . . .") (referring to Hearings Before the Subcomm. on Improvements of the Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 652-53, 703, 707, 714-15, 719-21 (1977)). In fact, Justice Stevens cites Grubbs and its discussion of legislative history in his concurrence in Nobelman. In agreeing with the majority, Justice Stevens concludes that its literal reading of the text of section 1322(b)(2) coincides with Congress's intent to "encourage the flow of capital into the home lending market." Nobelman, 113 S. Ct. at 2112 (Stevens, J., concurring) (citing Grubbs, 730 F.2d at 245-246). We acknowledge that section 1322(b)(2) reflects a congressional policy meant to protect home mortgage lenders.

13

Nevertheless, as we noted in Wilson, the language in section 1322(b)(2) is clear; it refers to "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C.A. § 1322(b)(2) (emphasis added); Wilson, 895 F.2d at 129. We are unable to read the statutory text to include mortgages which are secured not only by a "principal residence" but also by "appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever." App. at 15.

As the Hammonds point out in their brief, the Supreme Court's failure to address the effect of the additional security interest in the Nobelman mortgage does not imply that the Supreme Court held section 1322(b)(2) prohibits bifurcation of residential mortgages that also give the mortgagee a lien on personal property used in or about the residence. We conclude that Nobelman does not overrule our holding in Wilson or Sapos that a mortgagee who wishes to avoid bifurcation of its claim on a residential mortgage must limit its lien to the real estate. The district court correctly concluded that it had to follow this alternate holding in Sapos and Wilson and bifurcate Commonwealth's mortgage. This panel is also bound by the alternate holding of Sapos and Wilson, which the Supreme Court did not consider in Nobelman. See Internal Operating Procedure 9.1 ("It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. No subsequent panel overrules a holding in a published opinion of a

14

previous panel.  Court in banc consideration is required to do so.").

In the absence of clearer instruction from the Supreme Court than we see in Nobelman, we think the alternate rationale of Sapos and Wilson is controlling.  Any change in that holding is reserved to the Court in banc, not this panel.

## IV.  Conclusion

We conclude the Supreme Court's decision in Nobelman did not expressly or implicitly overrule this Court's alternate rationale for its decisions in Wilson and Sapos.  Therefore, we conclude that a mortgage which creates security interests in a debtor's personal property in addition to a lien on the mortgagor's principal residence takes the mortgage beyond the protection of the antimodification clause of section 1322(b)(2) of the Bankruptcy Code and permits bifurcation of the mortgage into secured and unsecured components under section 506(a).  Accordingly, we will affirm the order of the district court.